CAROLINE C. BISHOP, RESPONDENT, v. WARD B. CHAMBERLIN, APPELLANT, IMPLEADED, ETC.

*Assignee for creditors, receiving and enforcing securities held by his assignor as agent for a third party — the assignee, having notice, is liable individually — nor is he relieved from his liability by his discharge as assignee.*

The defendant Deane, who had been in the habit of receiving sums of money for investment for the plaintiff, took from one Meehen a bond and mortgage for $25,000, and guaranteed the payment of the same, paying therefor certain moneys of the plaintiff then in his hands for investment. Subsequently, having credited certain payments (although the same were not in fact made) upon the Meehen bond and mortgage, he took a further mortgage from the Meehens for $40,000, as collateral security to the said $25,000 bond and mortgage, and to certain other bonds and mortgages which had been given by Meehen to him. Thereafter the defendant Deane made a general assignment to the defendant Chamberlin for the benefit of the creditors of the former; and also assigned to Chamberlin, as such assignee, the $40,000 bond and mortgage above mentioned, for the foreclosure of which an action was subsequently brought in the name of Chamberlin, as assignee, which was discontinued and the mortgage satisfied upon the receipt of some $33,000. Prior to the receipt of this money the defendant Chamberlin had notice that there was $25,000 and interest due to the plaintiff upon the first above mentioned bond and mortgage, and that she claimed that amount from the proceeds of the $40,000 bond and

mortgage, the moneys received from which latter bond and mortgage Chamberlin agreed to deposit in a bank and to give the attorney of the plaintiff notice thereof that he might take such proceedings as he saw fit.

During the pendency of the foreclosure proceedings a suit was brought by a creditor of Deane to have the accounts of the defendant Chamberlin, as assignee, passed; in which proceedings a decree was entered approving the referee's report passing the accounts of the assignee and discharging the assignee and his sureties, and directing that the balance found due by the referee be paid to the United States Trust Company. This decree also contained a provision authorizing the plaintiff to intervene and establish her claim upon any of the funds in the assignee's hands.

In this action, brought against the defendants Deane and Chamberlin, individually, alleging the foregoing facts and claiming that it should be adjudged that there was due the plaintiff upon her said claim the sum of $25,000 and interest, the defendant Chamberlin alleged as a defense, that whatever moneys had been received by him on the foreclosure of the $40,000 mortgage came to him as assignee of Deane, and not otherwise, and also set up the judgment in the suit for an accounting ordering the distribution of the proceeds of the assigned estate.

*Held*, that the defendant Chamberlin, as assignee, had nothing whatever to do with this $25,000 mortgage of the plaintiff; nor with the collateral security, which was held as additional security for the amount secured thereby; that Deane having assigned the $25,000 mortgage to the plaintiff, and having guaranteed its payment and taken this $40,000 mortgage as additional security for such payment, that Mrs. Bishop had a first lien upon the proceeds of the $40,000 mortgage for the whole amount that was due to her upon the $25,000 mortgage.

That there was no authority to take therefrom the fictitious credits which Deane had indorsed upon the $25,000 bond and mortgage as having been received from Meehen.

That in all these transactions Deane was acting as the agent and trustee of Mrs. Bishop, and in all the transactions subsequent to the assignment, Chamberlin took the position of Deane, and thereby became the trustee of the plaintiff for the collection of this money.

That the plaintiff had nothing to do with Deane's assigned estate, had no rights to enforce against that estate, and could not be compelled to come in and submit her rights to a tribunal where she was an entirely unnecessary party.

That whatever agreements Chamberlin had made, in respect to this property of the plaintiff, were his individual agreements, for which he was personally responsible to the plaintiff, to whom he was liable to account for the money which he had received, by reason of his representing the claim which she had upon this mortgage.

*Semble*, that if Chamberlin had acted in ignorance of plaintiff's rights, he would probably have been protected, but where, with knowledge of those rights, he secured a decree to which she was not a party, and was not required to be a party, there was an utter failure of jurisdiction to enter any judgment which could, in any way, deprive the plaintiff of the rights to which she was entitled in this property.

That while the defendant Chamberlin was probably not bound to intervene for the purpose of protecting the security taken for the benefit of the plaintiff, that he, having so intervened, became responsible to her for the money collected upon that security; that although his intervention may have been, in name, an intervention as assignee, his undertaking and agreement with the plaintiff and her counsel were his individual agreements.

That it was no answer to this obligation to say that the two positions which were thus forced upon the defendant Chamberlin were antagonistic the one to the other, as Chamberlin voluntarily assumed to fill these antagonistic positions, if any such antagonism existed, and could not be heard to say, when called upon to account for his doings as trustee of the plaintiff, that he had acted on behalf of the other trust and protected its interest, and sacrificed the trust reposed in him by the plaintiff.

APPEAL by the defendant from judgment entered after a trial at Special Term.

*E. C. James*, for the appellant.

*J. E. Parsons*, for the respondent.

VAN BRUNT, P. J. :

For a considerable time prior to the time of the transactions which resulted in this action, the defendants Deane and Chamberlin had been engaged in business as attorneys and counselors at law in the city of New York, and they, as such attorneys and counselors, had represented the interests of the plaintiff. The defendant John H. Deane had been in the habit of receiving sums of money for his clients for investment, which he deposited in an account to his own credit called a trust account, and which he loaned indiscriminately upon bonds and mortgages, taking such bonds and mortgages in his own name and paying interest to his clients upon the sums received from them. At the times, hereinafter mentioned, said Deane held two powers of attorney from the plaintiff; the first dated May 3, 1878, authorizing him to take all necessary and legal steps for the collection of any bonds and mortgages belonging to her, and to make, seal and execute all necessary and proper receipts and discharges, except satisfaction pieces, assignments or releases of or for the same, and to indorse any checks received in her name for such interest or principal, and to make deposits of any sums belonging to her in any bank or trust company in the city of New York. The second power

of attorney bears date the 11th of May, 1880, and the defendant Deane was thereby authorized to recover payment of the whole principal sum and interest, or of any portion of any and all mortgages which she might then or at any time thereafter have, and also to sign, seal and deliver proper and full satisfaction pieces and assignments of and releases from any and all such mortgages.

On or about April 4, 1882, one, Elizabeth Meehen and Hugh Meehen, her husband, made their bond dated on that day to the defendant Deane for $25,000, which they bound themselves to pay him on demand with interest at six per cent. As security they gave him a mortgage of even date upon property situate at the southerly side of One Hundred and Ninth street, between Lexington and Fourth avenues. At or about the time of the execution of this bond and mortgage, the defendant Deane advanced the principal sum secured thereby, and subsequently having received a sum of money to be invested upon the part of the plaintiff, he applied the same to the purchase of this bond and mortgage, and on or about October 10, 1882, executed an assignment thereof to the plaintiff. He, however, retained possession of the papers, intending and treating the bond and mortgage as representing the investment of $25,000 of the money of the plaintiff, and so reported to the plaintiff. Between March 24, 1883, and October 25, 1884, inclusive, the defendant Deane, without the knowledge of the plaintiff, indorsed various credits upon said bond, leaving a balance due thereon of $14,986.59, with interest from April 5, 1884. The plaintiff knew nothing of the transactions out of which these credits arose, and Deane neither paid nor accounted to her for the said sums. They were not received as money by him from the Meehens, but consisted of credits to them in transactions between them and himself individually. On the 15th of September, 1882, the defendant received from the Meehens their bond, secured by a mortgage for the sum of $4,215, and, subsequently, on the 31st of August and September 1, 1883, and January 14, 1884, received certain other bonds, secured as aforesaid, from the Meehens. On the 19th of October, 1882, the Meehens executed a bond to the defendant Deane for $40,000, and, as security, they executed a mortgage of property known as the Netherwood Hotel, at Plainfield, N. J., which mortgage was recorded as a mortgage of real estate, on the

20th of October, 1882, and on the 1st of April, 1884, as a mortgage of personal property. This $40,000 bond and mortgage was given to the defendant Deane as collateral security for the said $25,000 bond and mortgage assigned to the plaintiff, and for such other bonds and mortgages as were owing to the defendant Deane from the Meehens. On or about the 1st of April, 1884, Deane placed the $40,000 bond and mortgage in the hands of his attorney, in Newark, for foreclosure. The amount claimed by the defendant Deane to be due from the Meehens, upon all their bonds and mortgages above mentioned, was $27,228.24 and interest, although $25,000 and interest was due to the plaintiff, and was guaranteed to be paid to by the defendant Deane.

In the proceedings for the foreclosure of this $40,000 mortgage, however, the defendant Deane claimed only the sum of $14,986.59 as due from the Meehens upon the mortgage belonging to the plaintiff, and the balance of the amount claimed in said foreclosure proceedings, amounting to $27,228.24, was made up of claims upon other bonds and mortgages held by Deane and made by the Meehens. On the 23d of April, 1884, the defendant Deane made to the defendant Chamberlin a general assignment for the benefit of his creditors, and subsequently, for a nominal consideration, made a special assignment to the defendant Chamberlin, as such assignee, of the $40,000 bond and mortgage.

In May, 1884, a suit was brought by the attorney employed by the defendant Deane to foreclose the $40,000 bond and mortgage, in the name of Chamberlin, as assignee. On the 13th of September, 1886, the mortgaged property was sold. The title stood in the name of the grantee of the mortgagors. It was conveyed by him, and the foreclosure suit was dismissed, and the $40,000 mortgage satisfied upon the receipt from the proceeds of the sale of the net sum of $33,063.53. As early as February, 1885, the defendant Chamberlin had notice that the plaintiff claimed that there was $25,000 and interest due to her upon the bond and mortgage assigned to her by Deane, and that she claimed that amount as due to her from the proceeds of the $40.000 bond and mortgage which had been taken by Deane as additional security to the $25,000 mortgage of the plaintiff, and the mortgages held by Deane and received from the Meehens.

Suggestions were made that the plaintiff should intervene in the

foreclosure suit and have the amount due to her established in that suit. These suggestions, however, were not carried into effect, and on the 17th of August, 1886, prior to the receipt of the money and the satisfaction of this mortgage, Chamberlin agreed to deposit the money received upon the $40,000 mortgage in bank, and to give the attorney of Mrs. Bishop notice thereof that he might take whatever proceedings he saw fit. The defendant Chamberlin thereupon was permitted to receive the proceeds of this bond and mortgage, and he deposited the same in a bank or trust company in New York.

During the time that these foreclosure proceedings were pending, a suit was brought by a creditor of Deane to have the accounts of Chamberlin, as assignee of Deane, passed, and such proceedings were thereupon had upon such accounting that a decree was entered on the 18th of October, 1886, approving a certain referee's report and passing the account of the assignee and discharging the assignee and his sureties, and directing that the balance found due by the referee be paid to the United States Trust Company. The decree also contained a provision authorizing the plaintiff to intervene and establish her claim upon any of the funds in the assignee's hands. This decree was served upon the plaintiff on the 27th of November, 1886, long after the commencement of this action. On the 23d of October, 1886, this action was commenced by the plaintiff against the defendants Deane and Chamberlin, individually, alleging the foregoing facts, and claiming that it should be adjudged that there was due to her upon her said claim and demand the sum of $25,000 and interest, and that it was only the nominal title to the claims and demands against the said property, standing in the name of Deane, which passed to the said Chamberlin, as assignee, and that the net proceeds of the sale were received by him as the property of the plaintiff and in trust for her benefit. The defendant Chamberlin, by his answer, claimed that whatever moneys were received by him for the foreclosure of the $40,000 mortgage came to him and were received by him as assignee of Deane, and not otherwise, and he denied that the sum alleged in the complaint, or any sum whatever, was due to the plaintiff. The defendant also set up the judgment in the suit for accounting above mentioned, passing his accounts and ordering the distribution of the proceeds of the assigned estate, and that the plaintiff had made no claim whatever against the

defendant, individually, or as assignee, except as to the funds or proceeds of the assigned estate in the final judgment aforesaid, and that in respect thereto the disposition of such funds then on deposit, under the provisions of the final judgment, was subject to the order of the court.

The foregoing facts having been established upon the trial of this action, the court held that Chamberlin had become the trustee of the plaintiff in reference to the collection of this mortgage, and was liable to her for the full amount which was due thereon. The conclusion arrived at by the learned judge who tried the case in the court below seems to be entirely supported by the evidence. In fact, upon the argument of this appeal, the main grounds which are presented, and upon which the claim of error is founded are, that the defendant Chamberlin was interested as assignee, and that no individual liability was established against him, and that he is protected by the judgment or decree in the action for his accounting as assignee. If the defendant in this case is to be held as assignee, the decree in the action for an accounting might be a bar, and whatever relief the plaintiff in this action was entitled to as against the said Chamberlin, as assignee, must be obtained in that suit, and not otherwise, although, in view of the peculiar provisions of the decree, it might very well be considered that there was more or less collusion between the parties to that action in reference to the disposition of the funds which the assignee had in his hands. It appears from the evidence in this case that this $25,000 bond and mortgage was the absolute property of the plaintiff, and that the $40,000 mortgage was taken as additional security to this $25,000 mortgage, and such other mortgages as Deane held from the Meehens. Under this condition of affairs the defendant Chamberlin, as assignee, had nothing whatever to do with this $25,000 mortgage of the plaintiff, nor with the collateral security which was held as additional security for the amount secured by the $25,000 bond and mortgage. Under these circumstances, Deane having assigned his bond and mortgage to the plaintiff, and having guaranteed its payment, and. having taken this $40,000 mortgage as additional security for such payment, in the division of the proceeds arising from the foreclosure of the $40,000 mortgage Mrs. Bishop had a first lien for all the amount that was due to her upon the $25,000 mortgage, and there is no

authority whatever to deduct therefrom these fictitious credits which Deane indorsed upon the $25,000 bond and mortgage, as though he had received the money from the Meehens.   That was a transaction between the Meehens and Deane, with which Mrs. Bishop had nothing to do and by which she was in no way bound.   Her claim for the full amount of $25,000 was not affected thereby, and if Deane chose to claim less from the Meehens than he was entitled to, that in no way militated against the security which inured to the plaintiff's benefit to the full extent to which Deane and the Meehens were indebted to her.   In all these transactions Deane was acting as the agent and trustee of Mrs. Bishop and was attempting to protect her rights, and in all the subsequent transactions Chamberlin took up what Deane had left off at the time he made his assignment, and thereby became the trustee of Mrs. Bishop for the collection of this money The affairs of Deane, in connection with his creditors, were of no interest or importance to her.   She claimed no rights under the assignment of Deane.   It was not necessary that she should enforce any claim under or through that assignment, because her claim was distinct, independent and individual, and her rights were in no manner affected by reason of any attempted assignment thereof by Deane.   Chamberlin, when he received this money, was fully aware of those rights and of the claims that Mrs. Bishop made, and, he agreed to hold this money until she should establish those claims. Instead of that, without any notice to her, he proceeds to have his accounts, as assignee, passed, and a decree is entered in that action upon the face of which it appears that the whole sum realized upon a disposition of the assets of the assigned estate, including the $32,829.16 belonging to plaintiff, which had been collected from the Netherwood mortgage, was the sum of $42,479.64.   By this decree, out of this sum is directed to be paid commissions to the assignee, $26,930.10, and to the referee, the plaintiff's attorneys, and the attorneys and counsel for the assignee, the sum of $15,550.67, being one dollar and thirteen cents more than the whole fund.   The decree then provides for the sale of the remaining assets, from which he has been able to collect nothing, at public auction, and a deposit of the proceeds in the United States Trust Company, and then follows the direction that if there should be any surplus after obey ing these directions, the said assignee should apply the same to the

payment of creditors. This decree then provides that, as there are certain claims stated in the referee's report, after the payment of the referee's fees, amounting to $1,250, and the costs and allowances to plaintiff's attorneys, amounting to $234.28, leaving a balance of $9,064.76 out of the $15,549.54 remaining upon the payment of the assignee's commissions, no further payments be made out of this fund for ten days after the entry of the decree and after notice of this order to the plaintiff, which time is allowed to her to intervene in respect to said balance remaining. That the plaintiff should decline this invitation is not to be wondered at ; $32,829.16 of her money had been distributed in the shape of assignee's commissions and counsel fees, without the slightest notice to her, and she had a right to be heard as to the tribunal which was to thus deprive her of her property, and she may well have hesitated to intervene in an action where there had been apparently such an utter disregard of her rights. ·

As has already been said, Mrs. Bishop had nothing to do with Deane's assigned estate, and had no rights to enforce against that estate, and she could not be compelled to come in and submit her rights to that tribunal where she was an entirely unnecessary party. Whatever agreements Chamberlin had made in respect to this property were his individual agreements, not as assignee, and he was responsible to Mrs. Bishop for the fulfillment of this agreement and liable to account to her for the money which he had received, by reason of his representing the claims that Mrs. Bishop had upon this mortgage, even if he did so voluntarily and without any agreement to account therefor. If Chamberlin had acted in ignorance of her rights, he probably would be protected, but where, with knowledge of those rights, he secures the protection of a decree to which she was not a party, and not required to be a party, there appears to be an utter failure of jurisdiction to render any judgment which can in any way deprive the plaintiff of the rights to which she is entitled.

The defendant Chamberlin was probably not bound to intervene for the purpose of protecting the security taken for the benefit of Mrs. Bishop, but, he having so intervened, he became responsible to her for the money collected upon that security. Although his intervention may have been, in name, an intervention as assignee, his

undertaking and agreement with the plaintiff and her counsel were the individual agreement of Ward B. Chamberlin, and they had nothing whatever to do with his relation to Deane as assignee.

It was suggested, upon the argument, that the two positions that were thus forced upon Chamberlin were antagonistic the one to the other. That may be true, but Chamberlin voluntarily assumed to fill those antagonistic positions, if any such antagonism existed, and he cannot now be heard to say, when called upon to account for his doings as trustee of the plaintiff, that he has acted on behalf of the other trust and protected its interests and sacrificed the trust reposed in him by the plaintiff.

Under all the circumstances of the case, it seems clear that Mrs. Bishop was entitled to call upon Chamberlin to pay to her the moneys received under this mortgage, under the pledge, on his part, that they should be held by him until her right to the same should be established, or even if no such pledge had been made, because he had knowledge of her claims, and that this Netherwood estate formed no part of the assigned estate, except to the extent of the sum remaining after the payment of Mrs. Bishop's claim.

If Chamberlin, as assignee, had any right to these funds, he was bound to establish them in this action, and if he fails in establishing such right, as assignee, he necessarily becomes responsible to the plaintiff, individually, for the execution of the trust which she reposed in him.

Some question has been made in regard to the form of the judgment; that the conclusions of law and the judgment directed to be entered did not harmonize. But it is apparent that this criticism is entirely a criticism upon words. The conclusions of law are, that the amount received by the defendant Chamberlin from the Netherwood property was received in trust for the plaintiff, and is first applicable to the payment of the $25,000 and interest due her. The second conclusion of law is, that out of the money so received by the defendant Chamberlin, and deposited by him, he pay to her the sum of $32,829.16, the amount due to her and interest; and the judgment entered is, that the plaintiff recover of the defendant, Ward B. Chamberlin, the sum of $32,959.71, being the amount above stated, with costs. This judgment is in entire harmony with the findings of fact. The findings charge Chamberlin with this sum because he

has received it, and the judgment adjudges that he pay the same. It was not at all necessary that the judgment should require him to pay it out of any particular money because there was a general liability arising out of the conclusions of law.

As to the claim that the judgment directed to be entered did not form part and parcel of the findings of fact and conclusions of law, it is sufficient to say that the findings of fact, conclusions of law and judgment appear to have been signed and entered at the same time, and the judgment formed part and parcel of the judicial action at the time of the signing of the findings of fact and conclusions of law which contained a direction for its entry.

The judgment should be affirmed, with costs.

DANIELS and BARTLETT, JJ., concurred.

Judgment affirmed, with costs.